UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| RICHARD PAUL GLUNK, | : | |
| | : | Bankruptcy No. 05-31656-ELF |
| Debtor(s) | : | |

| | | |
|---|---|---|
| DANIEL H. FLEDDERMAN  and | : | |
| COLLEEEN M. FLEDDERMAN, | : | |
| CoAdministrators of the Estate of Amy | : | Adversary No.  05-700 |
| Marie Fledderman, | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| RICHARD PAUL GLUNK, | : | |
| | : | |
| Defendant. | : | |

# MEMORANDUM OPINION

**BY: ERIC L. FRANK, United States Bankruptcy Judge**

## I.

The facts surrounding this adversary complaint are sad and rather foreign to the

bankruptcy court.  Because I have already provided a detailed recitation of the facts surrounding

this case in a separate opinion, see In re Glunk, Bky. No. 05-31656, slip op. (Bankr. E.D. Pa.

June 12, 2006), I will provide only a brief overview of the background here.

In May 2001, the Debtor, Richard Paul Glunk, performed liposuction surgery on a young

woman named Amy Fledderman.  Tragically, the procedure resulted in Miss Fledderman's death

on May 25, 2001.

Miss Fledderman's parents, Daniel and Colleen Fledderman, filed a lawsuit on behalf of

their daughter's estate against the Debtor in the Court of Common Pleas of Philadelphia County

on August 31, 2001 ("the CP Action").  Exactly four years later, on August 31, 2005, the Debtor

filed a voluntary petition for relief under Chapter 7.  On December 9, 2005,  Mr. and Mrs.

Fledderman, again on behalf of their daughter's estate (hereinafter "Plaintiffs"), initiated this

adversary proceeding to determine the dischargeablity of their claims against the Debtor.

In their Adversary Complaint, the Plaintiffs allege two (2) counts.  In Count I, the

Plaintiffs allege that their claim should be excepted from discharge under 11 U.S.C. § 523

(a)(2)(A).  In Count II, the Plaintiffs allege that their claim should be excepted from discharge

under 11 U.S.C. § 523 (a)(6).

On January 11, 2006, the Debtor filed a Motion to Dismiss Count I of the Plaintiffs'

Adversary Complaint pursuant to Fed. R. Bankr. P. 7012 and Fed. R. Civ. P. 12(b)(1) and

12(b)(6).  Oral argument on the Motion was held on March 2, 2006.

For the reasons stated herein, I will grant the Debtor's Motion to Dismiss, but also grant

the Plaintiffs leave to amend their Adversary Complaint pursuant to Fed. R. Bankr. P. 7015 and

Fed. R. Civ. P. 15(a).


## II.


The Debtor's Motion makes the broad assertion that this court lacks subject matter

jurisdiction. Yet, the Debtor's brief does not actively press the argument. In fact, the Debtor's

brief only addresses what is required for dismissal under Rule 12(b)(6).

The Debtor advances three arguments as to why Count I is legally deficient under Rules

12(b)(1) and 12(b)(6). First, the Debtor claims that the Plaintiffs cannot state a claim that

satisfies the necessary elements of §523(a)(2)(A) because the Debtor did not obtain any money

from the decedent and therefore, the decedent's estate does not have any claim against the

Debtor. Second, the Debtor makes the alternative argument that if money was obtained, the

Plaintiffs fail to establish a requisite element of fraud under §523(a)(2)(A) because the Plaintiffs'

Adversary Complaint contains no allegation that the Debtor fraudulently misrepresented the

purpose of his intended use of the funds he received. Finally, the Debtor argues that Count I

must fail because the Plaintiffs did not bring a claim for fraud in their underlying state lawsuit

against the Debtor and the statute of limitations for a fraud action under nonbankruptcy law has

since expired.


### A.

Dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) based on the legal

insufficiency of a pleaded claim is proper "only when the claim 'clearly appears to be immaterial

and made solely for the purpose of obtaining jurisdiction . . . or wholly insubstantial and

frivolous.'" Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d. Cir. 1991). The

Plaintiffs' claim under §523(a)(2) cannot be characterized as frivolous. See generally In re

Santos, 304 B.R. 639 (Bankr. D.N.J. 2004) (debt arising from medical malpractice held

nondischargeable under §523(a)(2) due to fraudulent misrepresentations that induced the creditor

to undergo a medical procedure).  Further, a Rule 12(b)(6) motion mischaracterized as a Rule

12(b)(1) motion, may actually prejudice a plaintiff because it will deprive the plaintiff of the

procedural safeguards resulting from the heightened burden imposed upon a plaintiff under Rule

12(b)(1).  Id.; Walnut Associates v. Saidel, 164 B.R. 487, 490 (E.D. Pa.1994) (the plaintiff bears

the burden of persuasion when subject matter jurisdiction is challenged in a 12(b)(1) motion

unlike a 12(b)(6) motion where the defendant bears the burden of showing no claim has been

stated).

Once the merits of the case are distinguished from the issue of subject matter jurisdiction,

it is clear that this court has subject matter jurisdiction of Count I pursuant to 28 U.S.C.

§1334(b).  Section 1334(b) provides for district court jurisdiction (referred to the bankruptcy

court pursuant to 28 U.S.C. §157(a)) of all "civil proceedings arising under title 11, or arising in

title 11 or related to cases under title 11."  This adversary proceeding, which asserts claims under

11 U.S.C. §523(a), arises under title 11.  E.g., United States v. Rashi, 2000 WL 1622761 (E.D.

Pa. October 30, 2000); In re Scott, 203 B.R. 590 (Bankr. E.D. Va. 1996).

For these reasons, there is no merit in the Debtor's argument that the court lacks subject

matter jurisdiction.

**B.**

In accordance with the notice pleading requirement practiced in the federal courts, a

pleading averring a claim for relief must set forth "a short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Bankr. P. 7008; Fed. R. Civ. P. 8(a).  In

reviewing a motion to dismiss for failure to state a claim, "all allegations in the complaint and all

reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the

light most favorable to the non-moving party." Sturm v. Clark, 835 F.2d 1009,1011 (1987);

accord, Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183 (3d Cir. 2000), cert.

denied, 532 U.S. 1038 (2001).  A court may dismiss a complaint for failure to state a claim only if

it is clear that no relief could be granted under any set of facts that could be proved consistent

with the allegations. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229 (1984); Jordan

v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Complaints for nondischargeability for fraud under §523(a)(2)(A) are governed by the

heightened pleading requirements of Fed. R. Bankr. P. 7009 and Fed. R. Civ. P. 9(b).  In re

Kroen, 280 B.R. 347, 350 n. 2 (Bankr. D. N.J. 2002) (citing In re Kanaley, 241 B.R. 795, 803

(Bankr. S.D.N.Y 1999)).  Thus, a complaint that merely asserts the legal elements of

§523(a)(2)(A) without making the required factual allegations will not survive a motion to

dismiss. Id. (citing American Express Travel Related Services Co. v. Henein, 257 B.R. 702, 707

(E.D.N.Y.2001)).  However, if a complaint is well pleaded, "[a] motion to dismiss in the context

of a challenge to the dischargeability of a certain indebtedness under § 523(a)(2) is generally

viewed in a disfavored light, primarily because the fact-intensive nature of such complaints,

especially those involving fraud and misrepresentation, render them poor candidates for summary

pre-trial disposition." In re Price, 1994 WL 142373 at *2 (Bankr. E.D. Pa. 1994).

The Plaintiffs' Complaint is quite detailed and specific with respect to the facts alleged

giving rise to their claim of nondischargeability based on the alleged fraud. The crux of the

Debtor's Rule 12(b)(6) argument is that the Complaint fails to state a claim under §523(a)(2)(A)

because it does not allege that the Debtor obtained money, property, services or credit from the

-5-

decedent's estate, or from any source for that matter, as a result of the Debtor's alleged

misrepresentations.  For the reasons stated below, I conclude that the Debtor is correct that such

an allegation is an essential element of a claim under §523 (a)(2)(A).

A debt may be held non-dischargeable under §523(a)(2)(A) if it was "for money, property,

services, or an extension, renewal, or refinancing of credit, to the extent it was obtained, by false

pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or

an insider's financial condition." 11 U.S.C. § 523(a)(2)(A).  The plain language of the statute

unambiguously requires, as a threshold matter, that something of value – specifically, money,

property, services or an extension, renewal, or refinancing of credit – be transferred to the debtor

from the creditor to sustain a claim under §523(a)(2)(A).  Thus, frauds which do not involve the

delivery of money, property, services or an extension, renewal, or refinancing of credit are not

encompassed by this discharge exception. See  In re Rountree, 330 B.R. 166, 171 (E.D. Va.

2004).  This principle was also alluded to by the Supreme Court in Cohen v. de la Cruz: "**[o]nce it

is established that specific money or property has been obtained by fraud**, . . . 'any debt'

arising therefrom is excepted from discharge."  523 U.S. 213, 218 (1998) (emphasis added). See

also  4 Collier on Bankruptcy, 523.08[1][a] (15th rev. ed. 2005) (before a debt may fall under the

exception of §523(a)(2)(A), "the debtor's fraud must result in a loss of property to the creditor").[1]

The Plaintiffs' Adversary Complaint is devoid of any such allegation of specific money,

property, services or credit fraudulently obtained by the Debtor as a result of his alleged

---

[1] In the interest of full disclosure, I note that I am a Contributing Author to Collier on
Bankruptcy, with responsibility for chapter 523.  Final editorial control of the content of the
treatise rests with an editorial board.  I am not a member of the editorial board.

misrepresentations.

Plaintiffs contend that the state court lawsuit they filed against the Debtor creates the debt

in issue. However, this is a bootstrap argument. The existence of the pending state court

litigation, by itself, cannot establish the type of debt contemplated by the statute to sustain a claim

under §523(a)(2)(A). There must be an actual debt for money, property, services or an extension,

renewal, or refinancing of credit arising from fraudulent conduct for §523(a)(2)(A) to apply, not

just the assertion that there was fraudulent conduct which caused some type of damages. See

Rountree, 330 B.R. at 172 (disallowing a claim under §523(a)(2)(A) where the Debtor did not

obtain anything of value from the creditor and the alleged "debt" was only a money judgment for

emotional distress resulting from the debtor's misrepresentations); In re Bruner, 43 B.R. 143, 146

(Bankr. E.D. Mo. 1984) (concluding that §523(a)(2)(A) was inapplicable in a case where there

was a state court judgment for seduction and breach of promise to marry, but there was no money,

property, services, or form of extension of credit transferred to the debtor from the plaintiff). Cf.

In re Hanft, 315 B.R. 617, 622 (S.D. Fl. 2002) (holding that a medical malpractice judgment that

resulted from fraud is a debt that can be excepted from discharge under §523(a)(2)(A) without

explicit finding that the Debtor obtained some money or property from the creditor).

The Debtor also argues that the Complaint fails to state a claim because the Plaintiffs did

not allege that "the Debtor fraudulently misrepresented the purposes for which he intended to use

the funds at the time he received them." In making this argument, the Debtor articulates

inaccurately the fraud requirements for a claim under §523(a)(2)(A). To assert the fraud

component for a claim under §523(a)(2)(A), the Plaintiffs must establish the following five

elements: (1) the debtor made a false representation; (2) at the time the debtor made the

-7-

representation, he knew it was false; (3) the debtor made the representation with the intention of

deceiving the creditor; (4) the creditor justifiably relied on the debtor's representation; and (5) the

creditor sustained the alleged loss and damages as a proximate result of the representation having

been made by the debtor. See In re Santos, 304 B.R. 639, 651 (Bankr. D. N.J. 2004); In re

Giarratano, 299 B.R. 328, 334 (Bankr. D. Del. 2003); In re Brady, 243 B.R. 253, 259 (Bankr.

E.D. Pa. 2000); In re Segal, 195 B.R. 325, 331 (Bankr. E.D. Pa. 1996). While there may be cases

in which false representations regarding a debtor's intended use of money or property delivered to

the debtor may be the gravamen of the alleged fraud,[2] that does not appear to be the Plaintiffs'

theory in this case. Their theory is that the Debtor's misrepresentations induced their daughter to

undergo the surgical procedure that resulted in her death; it has nothing to do with the Debtor's

disposition of any money or property delivered to him in consideration for his agreement to

provide medical services to the Debtor. The Debtor's argument is an attack on a straw man.

        I pause to address briefly one other element of the nondischargeability under

§523(a)(2)(A): proximate causation. There is an unresolved issue in this case concerning the

application of the proximate cause requirement in a §523(a)(2)(A) proceeding when the damages

claimed stem from a medical misadventure.[3] For example, if a misrepresentation, justifiably

relied upon by a debtor, caused the debtor to undergo a medical procedure, but the

misrepresentation is unrelated to the inadequate treatment that actually caused the debtor's

---

    [2] See In re Barnette, 281 B.R. 869 (Bankr. W.D. Pa. 2002) (there is a narrow line of cases
in which the promise to perform a contract is itself found to be a fraudulent representation
because the debtor never intended to perform the contract).

    [3] While not addressed in any of the written submissions, this issue was discussed during
oral argument.

physical injury, has the creditor established that the misrepresentation proximately caused the alleged loss for purposes of §523(a)(2)(A)? Put another way, is a misrepresentation which causes the debtor to undergo the treatment sufficient to satisfy the proximate cause requirement under §523(a)(2)(A) even though the most direct cause of the physical injury may have been "mere" negligence? Or, must there be a more direct nexus between the misrepresentation and injuries suffered?

In this case, the Plaintiffs allege facts which would satisfy the more rigorous standard for proximate causation because they allege, inter alia, that the Debtor misrepresented that an anesthesiologist would be present during the procedure, knowing that only a nurse-anesthetist would be present and that the misrepresentation concerning "the personnel who would be present during the surgery" was a proximate cause of their daughter's death. Thus, there is no reason for me to decide this issue at the pleading stage of this case.[4] In a separate decision, issued in the main bankruptcy case, I have modified the automatic stay to permit the Plaintiffs to pursue the CP Action against the Debtor. The outcome of that lawsuit may ultimately determine whether the issue of proximate cause under §523(a)(2)(A) need ever be addressed in this proceeding.

---

[4] There are reported decisions which suggest that the less rigorous standard applies. See Rountree, 330 B.R. at 172 (interpreting Cohen to mean that once a creditor proves that the debtor fraudulently took something of value, such as money, property, or services, from the creditor, then any damages resulting from that fraud are nondischargeable under §523(a)(2)(A)); In re Santos, 304 B.R. at 670 (malpractice is a foreseeable result of any medical procedure and proximate cause can be proven if the debtor fraudulently induced the creditor to undergo a procedure that was then negligently performed). See generally Cohen v. de la Cruz, 523 U.S. at 221, 118 S.Ct. at 1217 ("[w]hen construed in the context of the statute as a whole . . . § 523(a)(2)(A) is best read to prohibit the discharge of any liability arising from a debtor's fraudulent acquisition of money, property"). As stated above in the text, I take no position on the issue at this time.

## C.

The Debtor also argues that Count I fails because the Plaintiffs did not file a fraud claim in the underlying state litigation within the applicable state statute of limitations. Although I am dismissing Count I of Plaintiffs' Adversary Complaint for failure to state a claim under Rule 12(b)6), I address this argument due to the virtual certainty that the Plaintiffs will file an Amended Complaint to plead additional facts in order to rectify the deficiency in the original Complaint.

This issue has already been examined by both the Ninth and Tenth Circuits. See In re Gergely, 110 F.3d 1448 (9th Cir. 1997); In re McKendry, 40 F.3d 331 (10th Cir. 1994). In McKendry, the creditor filed an adversary proceeding to determine the dischargeablity under §523(a)(2) of a deficiency judgment entered in state court on a complaint that did not allege fraud. When the bankruptcy petition was filed, the state statute of limitations for fraud actions had already expired. The bankruptcy court held the complaint for a determination of nondischargeablity pursuant to §523(c) was time barred and the district court affirmed. Id. at 334.

On appeal, the Tenth Circuit reversed and concluded that the 60 day deadline set forth in Fed. R. Bankr. P. 4007(c) for filing adversary complaints under 11 U.S.C. §523(a)(2), not the state statute of limitations for fraud, governed the timeliness of the complaint for dischargeability. Id. In doing so, the court explained that there is a fundamental distinction between a cause of action brought in state court to enforce state law and a complaint filed in bankruptcy court to determine dischargeability.

-10-

The McKendry court articulated what has been interpreted as a two-step inquiry under §523(a)(2)(A). See In re Banks, 225 B.R. 738, 745 (Bankr. C.D. Cal. 1998) (adopting the "two-step process" established in McKendry and adopted by Gergely); In re Boyer, 1999 WL 33954735 *9 (E.D. Va. 1999) (stating that "the McKendry two-step approach is the most logical and fair approach to the statute of limitations issue in the dischargeability context"). First, a debt must be established. It is this first inquiry that the McKendry court believed went to the state statute of limitations. Essentially, if the underlying lawsuit was not brought within the applicable statute of limitations, a debt cannot be established. The second inquiry, the nature and ultimate decision as to the dischargeability of such debt, is solely governed by the limitations periods established by bankruptcy law. This latter issue has nothing to do with the state's statute of limitations. McKendry, 40 F.3d at 337. Accordingly, the Tenth Circuit remanded the case back to the bankruptcy court for a determination of the underlying nature of the debt, despite the fact that a fraud claim was never filed in the underlying state court action. Id.

While McKendry, and later Gergely, involved creditors who obtained judgments before a bankruptcy petition was filed, the same rationale has been extended under §523(a)(2) where an underlying lawsuit was filed pre-petition within the applicable state statute of limitations, but had not yet reached a final judgment. See In re Banks, 225 B.R. at 745, aff'd, 263 F.3d 862 (9th Cir. 2001) (holding that "a debt upon which the state statute of limitations for fraud . . . has run prior to the filing of the bankruptcy case has been 'established' pre-petition if the creditor has taken a timely affirmative act which is necessary to the creditor's ability to collect the debt in a manner provided by law).

I am persuaded by the rationale of these cases. Whether or not the Plaintiffs asserted a

-11-

timely fraud claim in the underlying state litigation bears no significance in the bankruptcy court's

ultimate determination of the nature of the debt and whether such debt is dischargeable pursuant

to §523(a)(2)(A).  As explained by one bankruptcy court:

> [T]here is no requirement that the allegations of a complaint filed in
> state court prior to a debtor filing a petition in bankruptcy
> correspond to the elements of the grounds contained in §523(a) of
> the Bankruptcy Code. Otherwise, plaintiffs in state court would be
> required to anticipate the bankruptcy of every defendant and litigate
> every conceivable issue under §523(a) in the event a defendant
> should subsequently file bankruptcy. Such needless litigation is not
> required by the Bankruptcy Code.

In re Moran, 152 B.R. 493, 496 (Bankr. S.D. Ohio 1993); accord, In re Gonzalez, 241 B.R. 67,

75 (S.D.N.Y. 1999) ("The decision to forego pursuing a possible fraud claim cannot in the

dischargeablity context constitute a waiver or an inconsistent position before the second court, for

. . . the determination to later seek a declaration of fraud is made in response to the debtor's

setting up of his bankruptcy discharge as a defense"); Boyer, 1999 WL 33954735 at *9 ("A debtor

should not be allowed to let the state statute of limitations run on a fraud cause of action, file for

bankruptcy protection, and then be shielded from a fraud dischargeability complaint in the

Bankruptcy Court because the state statute ran.").

Presuming the Plaintiffs filed their state court lawsuit within the applicable limitations

period (and the Debtor makes no argument to the contrary), that filing is sufficient to remove the

timeliness issue from the determination whether the debt is non-dischargeable in the bankruptcy

case. The Plaintiffs filed the present Adversary Complaint within the applicable time limitations

under Fed. R. Bankr. P. 4007.  Consequently, the Debtor's timeliness argument fails.  However,

as stated earlier, Debtor's Motion will be granted on another ground pursuant to Fed. R. Bankr. P.

7012 and Fed. R. Civ. P. 12(b)(6).

An appropriate order follows.

Date:   6/12/06

ERIC L. FRANK

U.S. BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **In re** | : | **Chapter 7** |
| **RICHARD PAUL GLUNK,** | : | |
| | : | **Bankruptcy No. 05-31656-ELF** |
| **Debtor(s)** | : | |

| | | |
|---|---|---|
| **DANIEL H. FLEDDERMAN  and** | : | |
| **COLLEEEN M. FLEDDERMAN,** | : | |
| **CoAdministrators of the Estate of Amy** | : | **Adversary No.  05-700** |
| **Marie Fledderman,** | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **RICHARD PAUL GLUNK,** | : | |
| | : | |
| **Defendant** | : | |

# O R D E R

**AND NOW,** for the reasons set forth in the accompanying Memorandum Opinion, it is

hereby ORDERED that the Motion of Debtor to Dismiss Count I of the Adversary Complaint is

GRANTED.  Plaintiffs are granted leave to amend their Adversary Complaint pursuant to Fed. R.

Bankr. P. 7015 and Fed. R. Civ. P. 15(a) within twenty (20) days hereof.

Date:  6/12/06

ERIC L. FRANK
U.S. BANKRUPTCY JUDGE