# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re : | | Chapter 7 |
| **RICHARD PAUL GLUNK,** : | | |
| : | | Bankruptcy No. 05-31656-ELF |
| Debtor(s) : | | |
| **DANIEL H. FLEDDERMAN and** : | | |
| **COLLEEN M. FLEDDERMAN, As** : | | |
| Co-Administrators of the Estate of Amy : | | Adversary No. 05-700 |
| Marie Fledderman, : | | |
| : | | |
| Plaintiffs : | | |
| : | | |
| v. : | | |
| : | | |
| **RICHARD PAUL GLUNK,** : | | |
| : | | |
| Defendant. : | | |
| : | | |

# O R D E R

**AND NOW**, Plaintiffs Daniel and Colleen Fledderman, acting on behalf of their daughter's estate ("the Estate"), having filed a two (2) count Amended Complaint against the Debtor to except a debt from discharge under 11 U.S.C. §523(a)(2)(A), and/or §523(a)(6);

**AND**, prior to instituting this adversary proceeding, the Plaintiffs having brought certain claims against the Debtor on behalf of the Estate in state court litigation in <u>Fledderman, et al. v. Glunk, et al.</u>, No. 3619, Aug. Term 2001 (C.P. Phila.) ("the State Court Litigation");[1]

---

[1] The Plaintiffs asserted claims against multiple defendants in the State Court Litigation on behalf of the Estate of their daughter, Amy Fledderman ("Ms. Fledderman"). Against the Debtor, the Estate asserted claims for negligence and lack of informed consent/battery and sought punitive damages premised on allegations that the Debtor engaged in conduct that was willful, intentional and reckless.

-1-

**AND**, Defendant-Debtor Richard P. Glunk ("the Debtor") having filed an Answer to the Amended Complaint, (Adv. Docket Entry No. 46);[2]

**AND**, the parties having filed cross motions for summary judgment on December 18, 2008 (Adv. Docket Entry Nos. 47 & 49);

**AND**, the parties having supplemented the summary judgment record by filing the Jury Charge from the State Court Litigation as directed by the court's order of April 15, 2009 (Adv. Docket Entry Nos. 55, 57);[3]

**AND**, the Plaintiffs requesting summary judgment on the 11 U.S.C. §523(a)(2) claim and the Debtor requesting summary judgment on the 11 U.S.C. §523(a)(6) claim;

**AND**, Fed. Rule Civ. P. 56(c), made applicable to adversary proceedings through Fed. R. Bankr. P. 7056, providing that summary judgment should be granted when the "pleadings, the

---

See State Court Complaint (attached as Exh. A. to Def.'s Mot. for Summ. J.) (Adv. Docket Entry No. 49-2). The jury found the Debtor liable on all of these claims and awarded the Estate over $17 million, which included an award of $15 million in punitive damages. See Jury Verdict Slip dated May 23, 2008 (attached as Exh. 2 to Pls.' Mot. for Summ. J.) (Adv. Docket Entry No. 47-6) (also attached as Exh. F to Def.'s Mot. for Summ. J.)(Adv. Docket Entry No. 49-7).

[2]  Prior to filing his answer, the Debtor filed a motion to dismiss the Amended Complaint alleging, inter alia, that the Plaintiffs impermissibly amended the caption of this adversary matter to add themselves as plaintiffs in their individual capacities. See Def.'s Mot. to Dismiss Am. Compl. (Adv. Docket Entry No. 23). I granted the Debtor's motion, in part. See Order dated September 15, 2006 (Adv. Docket Entry No. 29). Most significantly, I struck all references to Daniel H. Fledderman and Colleen M. Fledderman as plaintiffs in their individual capacities. For purposes of this adversary matter, the Plaintiffs are acting in their capacity as administrators of their deceased daughter's estate and accordingly are asserting the estate's claims. They are not acting in their individual capacities.

[3]  I directed that the summary judgment record be supplemented because, in the event that summary judgment was not granted, I wished to determine whether those facts "not genuinely at issue" might be specified, as authorized by Fed. R. Civ. P. 56(c), so as to streamline the trial of this proceeding. I have determined that it is not appropriate to exercise my authority to issue a Rule 56(c) determination.

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law";

### Elements of Collateral Estoppel

**AND**, the parties' respective motions each asserting that judgment should be entered based on the application of the doctrine of collateral estoppel;

**AND**, in invoking the doctrine of collateral estoppel, each party relying upon the state court jury's findings as set forth in the Jury Verdict Slip from the State Court Litigation;

**AND,** the doctrine of collateral estoppel being applicable to nondischargeability issues under §523(a), see Grogan v. Garner, 498 U.S. 279, 285, 111 S.Ct. 654, 658 (1991); In re Graham, 973 F.2d 1089, 1097 (3d Cir. 1992);

**AND**, 28 U.S.C. §1738 governing the use of a prior state court decision to preclude the relitigation of issues in a subsequent federal proceeding;[4]

**AND**, under §1738, the preclusive effect, if any, of the findings in the State Court Litigation being determined by Pennsylvania law;[5]

---

[4]    Section 1738 provides, in pertinent part:

> Acts, records and judicial proceedings [of any court of a State, Territory or Possession of the United States] . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

Id.

[5]    See, e.g., Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n, 342 F.3d 242, 254 ( 3d Cir. 2003) ("a federal court generally must give deference to a state court judgment, granting 'the same preclusive effect to a state-court judgment as another court of that State would give'"); see also Walzer v. Muriel, Siebert & Co., Inc., 221 Fed. Appx. 153, 155 (3d Cir. 2007) (nonprecedential); In re Titus &

**AND**, under Pennsylvania law, collateral estoppel applying when:

>(1) an issue is identical to one that was presented in a prior case;
>
>(2) there has been a final judgment on the merits of the issue in the prior case;
>
>(3) the party against whom the doctrine is asserted was a party in, or in privity with a party in, the prior action;
>
>(4) the party against whom the doctrine is asserted, or one in privity with the party, had a full and fair opportunity to litigate the issue in the prior proceeding; and
>
>(5) the determination in the prior proceeding was essential to the judgment.[6]

**AND**, as with other §523(a) exceptions to discharge, the creditor bearing the burden of demonstrating nondischargeability by a preponderance of the evidence. See, e.g., Grogan, 498 U.S. at 291; Graham, 973 F.2d at 1101;

---

McConomy, LLP, 375 B.R. 165, 172-73 (Bankr. W.D. Pa. 2007); In re Dawley, 312 B.R. 765, 775 (Bankr. E.D. Pa. 2004).

[6]    E.g., Cohen v. Workers' Comp. Appeal Bd. (City of Philadelphia), 909 A.2d 1261, 1264 (Pa. 2006); In re Randall, 358 B.R. 145, 164 (Bankr. E.D. Pa. 2006).

I am aware of Pennsylvania state court decisions and federal decisions applying Pennsylvania law that have employed only a four-part test in applying collateral estoppel, rather than the five-part test set forth above. The difference between the two tests is that the "four-part test" does not include the "fifth element" (i.e., that the prior determination was "essential to the judgment"). Compare Greenway Ctr. v. Essex Ins. Co., 475 F.3d 139, 147 (3d Cir. 2007) (four-part test); Greenleaf v. Garlock, 174 F.3d 352, 357-58 (3d Cir. 1999) (same); Tucker v. Philadelphia Daily News, 848 A.2d 113, 119 n.11 (Pa. 2004) (same) with Nat'l R.R. Passenger Corp., 342 F.3d at 252; Office of Disciplinary Counsel v. Kiesewetter, 889 A.2d 47, 50-51 (Pa. 2005) (five-part test). In this case, it is unnecessary for me to resolve this conflict because I find collateral estoppel is inapplicable to both motions based on other requirements that must be satisfied for the doctrine to apply.

**Plaintiffs' Motion - the §523(a)(2) Claim**

**AND**, §523(a)(2)(A) excepting from discharge any debt "for money, property, services . . . to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition," 11 U.S.C. §523(a)(2)(A);

**AND**, to establish its claim under §523(a)(2)(A) for false representations, as alleged in Paragraph 14 of the Plaintiffs' Amended Complaint,[7] the Plaintiffs having to prove the following

---

[7] The Plaintiffs make several allegations pertaining to the Debtor's conduct to form the basis for their §523(a)(2)(A) claim. See Pls.' Am. Compl. The Plaintiffs allege that the Debtor made the following affirmative false representations or omissions of material fact:

> (1) He told Ms. Fledderman that an "anesthesiologist" would be present to administer anesthesia and post-anesthesia care; even though it was a nurse anesthetist. Id. at ¶14a.
>
> (2) He told Ms. Fledderman that she had "zero risk" for any complications even though he knew she was at a greater risk for complications from anesthesia because of his knowledge of her prior history of problems with anesthesia relating to a prior surgical procedure the Debtor performed. Id. at ¶14b.
>
> (3) He told Ms. Fledderman that she would be safe having the procedure in his office, notwithstanding that (a) he knew he needed a surgeon to proctor him in a hospital due to previous mistakes he made performing abdominal liposuction; (b) his office was not licensed for surgery as an "ambulatory surgical facility" as required under state law; and (c) that his facility was operating in violation of a certain state administrative codes regulating health facilities. Id. at ¶14c.
>
> (4) He used a "Main Line Health/Jefferson Health System" consent form, which falsely suggested his facility was associated with and operated under the auspices of a large health system; notwithstanding that Debtor was operating a solo practice from an unlicensed facility. Id. at ¶14e.

The Plaintiffs allege that the Debtor made the following omissions:

> (1) That his facility was not complying with certain state law codes. Specifically, that the facility:
>
>> (a) was not prepared to initiate onsite resuscitation or other appropriate response to an emergency;

five elements:

(1) the debtor obtained money, property or services[8] by making a false

---

    (b) did not have an effective procedures for immediate transfer to a hospital for patients requiring emergency care beyond the facility's capabilities;

    (c) did not have a written transfer agreement with a hospital that had emergency surgical privileges available, nor did the physicians performing surgery at the facility have admitting privileges at a hospital in close proximity to the facility to which patients may be transferred;

    (d) did not have a written agreement in effect with an ambulance service staffed by certified EMT personnel, for the safe transfer of a patient to a hospital in an emergency situation, or as the need arose;

    (e) did not have airway breathing bags and devices for the provision of positive pressure rescue breathing (i.e., a mechanical ventilator);

Id. at ¶14d.

    (2) That the Debtor's liposuction privileges at Main Line Health/Jefferson Health System were limited due to prior inappropriate liposuction surgeries that caused injury and that he could only perform liposuction surgery at Main Line Health under the supervision of an experienced practitioner acting as a proctor. Id. at ¶14f.

    I note that the Plaintiffs' Amended Complaint also included the allegation that the Debtor made false representations post-surgery to Colleen Fledderman, Ms. Fledderman's mother. See Am. Compl. at ¶15. I do not consider those alleged false representations to be part of the §523(a)(2)(A) claim because the Plaintiffs, in their individual capacities, are not the creditors in this matter, see n.2, supra, and my September 15, 2006 Order struck all references in the Amended Complaint to the Plaintiffs in their individual capacities.

---

[8]    The Debtor disputes whether this case involves a debt to the Estate "for money, property or services." The Debtor contends that under §523(a)(2)(A), the "money" the debtor receives must come from the §523(a)(2)(A) plaintiff. Here, because the money the Debtor received came from the Plaintiffs and not Ms. Fledderman or her Estate, the Debtor contends that the threshold requirement under §523(a)(2)(A) has not been satisfied. In support of his argument, the Debtor points to my prior Memorandum on his Motion to Dismiss, In re Glunk, 343 B.R. 754 (Bankr. E.D. Pa. 2006), which stated:

    [t]he plain language of the statute unambiguously requires, as a threshold matter, that something of value – specifically, money, property, services or an extension,

representation;

(2) at the time the debtor made the representation, he knew it was false;

(3) the debtor made the representation with the intention of deceiving the creditor;

(4) the creditor justifiably relied on the debtor's representation; and

(5) the creditor sustained the alleged loss and damages, which was proximately caused by the debtor's misrepresentation;[9]

**AND**, the Plaintiffs relying on the finding the jury made in response to Interrogatory No. 11[10] in the State Court Litigation as the basis for their contention that they are entitled to

---

renewal, or refinancing of credit – <u>be transferred to the debtor from the creditor</u> to sustain a claim under §523(a)(2)(A).

<u>Id.</u> at 758 (emphasis added).

In response, the Plaintiffs argue that the moneys they paid the Debtor were the proceeds of a loan to their daughter. In sur-rebuttal, the Debtor asserts that the money could not have been a loan from the Plaintiffs because the Plaintiffs never filed a claim against the Estate. <u>See</u> Certified Letter from the Register of Wills and Clerk of Orphans' Court Division of Delaware County, attached as Exh. A to Def.'s Resp. to Pls.' Mot. for Summ. J.

I need not resolve the factual dispute whether the money the Debtor received constituted the proceeds of a loan between the Fleddermans and their daughter. The plain text of §523(a)(2)(A) is in the passive voice and does not require that the creditor be the transferor of the money. What is germane is whether there is a debt for money that the debtor <u>obtained</u> by false representation, false pretenses or fraud. <u>See</u> <u>also</u> <u>McClellan v. Cantrell</u>, 217 F.3d 890 (7th Cir. 2000)( "[T]he statute does not require that the transferor be the victim of the fraud, but only that money, property, or services be obtained by fraud"); <u>Santos</u>, 304 B.R. at 659 (money received by Debtor did not come from an account of the actual creditor who was defrauded and ultimately harmed by the misrepresentation). Therefore, whether or not the money the Debtor received was the result of a loan is a non-issue.

---

[9]     <u>See</u> <u>In re Santos</u>, 304 B.R. 639, 651 (Bankr. D. N.J. 2004); <u>In re Giarratano</u>, 299 B.R. 328, 334 (Bankr. D. Del. 2003), <u>aff'd</u>, 358 B.R. 106 (D. Del. 2004); <u>In re Brady</u>, 243 B.R. 253, 259 (Bankr. E.D. Pa. 2000); <u>In re Feld</u>, 203 B.R. 360, 365 (Bankr. E.D. Pa. 1996).

[10] Interrogatory No. 11 states the following:

*Was Amy Fledderman induced into undergoing the liposuction procedures by any*

summary judgment under §523 (a)(2)(A) based upon the doctrine of collateral estoppel;

**AND**, the court concluding that the jury's finding in response to Interrogatory No. 11 does **not** establish all the elements of the Plaintiffs' claim under §523(a)(2)(A) through the application of the doctrine of collateral estoppel;[11]

**AND**, therefore, the court concluding that the Plaintiffs' Motion for Summary Judgment

---

*fraudulent misrepresentations of Richard P. Glunk, M.D.?*

The jury answered "Yes" in response to Interrogatory No. 11. Jury Verdict Slip at 3.

[11]   The absence of any instructions in the Jury Charge regarding the standards the jury applied in deciding whether the Debtor made "fraudulent misrepresentations" to Ms. Fledderman is fatal to the Plaintiffs' asserted entitlement to summary judgment on the §523(a)(2)(A) claim. The record does not permit me to find that standards used by jury are congruent with the standards necessary for a determination of nondischargeability under 11 U.S.C. §523(a)(2)(A). Thus, the Plaintiffs have not established that the issue the jury decided is identical to the §523(a)(2)(A) issue before this court. See, e.g., In re Gallagher, 2007 WL 782183, at *3-4 (W.D.N.C. Mar. 13, 2007); In re Donovan, 255 B.R. 224, 227-28 (Bankr. D. Neb. 2000); In re Krautheimer, 210 B.R. 37, 53-55 (Bankr. S.D.N.Y. 1997).

The absence of jury instructions on an issue critical to this bankruptcy proceeding is not surprising because it appears that the issue of fraud was immaterial in the State Court Litigation. While the Plaintiffs included claims concerning negligent misrepresentations or omissions, the Plaintiffs did not set forth any claim for fraud in their state court complaint. Thus, Interrogatory No. 11 has the appearance of being a question for the jury that the litigants "tacked on" at the end of a trial of other claims – added solely for the purpose of streamlining the bankruptcy dischargeability proceeding they knew would follow in this court. The record presented to me (which consists solely of the state court complaint, the Jury Charge, the Debtor's Post Trial Motion, the Jury Verdict Slip and a brief excerpt of Colleen Fledderman's trial testimony) does not demonstrate that the issue of fraud came up at any time during the state court trial prior to the submission of the Jury Interrogatory. On this record, I cannot conclude the Debtor had a full and fair opportunity to litigate the issue of fraud or that the parties actually litigated the issue. See John J. Dvorske, 10 Standard Pennsylvania Practice 2d §65:98 (West 2009) ("[a]n issue is actually litigated, for the purpose of applying the doctrine of collateral estoppel, **when it is properly raised**, submitted for determination, **and** then actually determined) (emphasis added); see also Com. v. Holder, 805 A.2d 499 (Pa. 2002). This is a second, independent reason for denying the Plaintiffs' motion for summary judgment.

should be denied;[12]

### Defendant's Motion Under §523(a)(6)

**AND**, 11 U.S.C. §523(a)(6) excepting from discharge any debt for a "willful and malicious injury by the debtor to another entity or to the property of another entity"; 11 U.S.C. §523(a)(6);[13]

---

[12]     The Plaintiffs also assert that summary judgment is warranted under §523(a)(2)(A) on the basis of the doctrines of res judicata and the Rooker-Feldman doctrine. These arguments are easily dismissed.

The Plaintiffs' res judicata argument was rejected by the Supreme Court almost thirty (30) years ago. See Brown v. Felsen, 442 U.S. 127, 99 S.Ct. 2205 (1979).

Nor is any extended discussion of the Rooker-Feldman doctrine necessary. Succinctly put, the Rooker-Feldman doctrine divests a federal court of subject matter jurisdiction if the relief requested effectively would reverse a state court decision or void its ruling. See, e.g., Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 547 (3d Cir. 2006); In re Knapper, 407 F.3d 573, 580 (3d Cir. 2005). A determination of dischargeability under 11 U.S.C. §523(a) does neither; rather, the §523(a) proceeding determines only whether the Bankruptcy Code's discharge injunction, statutorily authorized by 11 U.S.C. §524, will restrain enforcement of the state court judgment. The Rooker-Feldman doctrine does not limit Congress' constitutionally based bankruptcy power to enact a statute providing for an injunction against the enforcement of state court judgments. The bankruptcy court has jurisdiction to decide if the statutory injunction applies. See In re Funches, 381 B.R. 471, 484 (Bankr. E.D. Pa. 2007) (citing In re Knapper, 407 F.3d at 583 n.22); In re Ehmke, 2006 WL 1994904, at *5 (E.D.N.Y. July 14, 2006)).

[13]     The key phrase in §523(a)(6) is "willful and malicious injury." Generally speaking, the willfulness requirement refers to conduct that is "deliberate" or "intentional." 4 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶523.12[2], at 523-92.4 (15th rev. ed. 2007) ("Collier"). However, "[t]he word 'willful' in [§523](a)(6) modifies the word 'injury,' indicating that nondischargeability [under §523(a)(6)] takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 118 S.Ct. 974, 977 (1998)). The "malice" requirement refers to injuries that are "wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will." Collier, ¶523.12[2], at 523-92.4. The two concepts are said to be "distinct requirements." Id. ¶523.12[2], at 92.3. For a further discussion of the "willful and malicious" requirement under §523(a)(6), see In re Jacobs, 381 B.R. 128, 136-39 (Bankr. E.D. Pa. 2008).

**AND**, the Debtor relying on the finding the jury made on Interrogatory No. 10[14] in the State Court Litigation as the basis for his contention that he is entitled to summary judgment under §523(a)(6) based upon the doctrine of collateral estoppel;

**AND**, the court concluding that the jury's finding in response to Interrogatory No. 10 does **not** establish a defense to the Plaintiffs' §523(a)(6) claim through the application of the doctrine of collateral estoppel;[15]

**AND**, therefore, the court concluding that the Debtor's Motion for Summary Judgment should be denied;

---

[14]  Interrogatory No. 10 states the following:

> *Was the conduct of Richard P. Glunk, M.D., that caused plaintiffs' injuries and death willful and malicious?*

The jury answered "No" in response to Interrogatory No. 10. Jury Verdict Slip at 3.

[15]  The key phrase in §523(a)(6) is "willful and malicious injury." Generally speaking, the willfulness requirement refers to conduct that is "deliberate" or "intentional." 4 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶523.12[2], at 523-92.4 (15th rev. ed. 2007) ("Collier"). However, "[t]he word 'willful' in [§523](a)(6) modifies the word 'injury,' indicating that nondischargeability [under §523(a)(6)] takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 118 S.Ct. 974, 977 (1998)). The "malice" requirement refers to injuries that are "wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will." Collier, ¶523.12[2], at 523-92.4. The two concepts are said to be "distinct requirements." Id. ¶523.12[2], at 92.3. For a further discussion of the "willful and malicious" requirement under §523(a)(6), see In re Jacobs, 381 B.R. 128, 136-39 (Bankr. E.D. Pa. 2008).

The jury was not charged regarding the standards it should apply in answering Interrogatory No. 10 (i.e., there were no instructions regarding the meaning of "willful and malicious"). Thus, it is not possible to determine whether the issue determined by the jury is identical to the §523(a)(6) issue before this court. See n.11, supra.

It is therefore, **ORDERED** that:

1. The Plaintiffs Motion for Summary Judgment is **DENIED**.

2. The Debtor's Motion for Summary Judgment is **DENIED**.

3. A mandatory pretrial conference shall be held on **June 17, 2009, at 1:00 p.m. in Bankruptcy Courtroom No. 1, Robert N.C. Nix Federal Building & Courthouse, 900 Market Street, Second Floor, Philadelphia, Pennsylvania**.

4. Prior to the pretrial conference, the parties shall hold a conference inter sese to discuss the following issues:

    a. the need, if any, for further discovery in this proceeding and, if discovery is required, the appropriate deadline for the completion of discovery;

    b. the appropriate deadline(s) for compliance with Fed. R. Civ. P. 26(a)(2) and 26(a)(3);

    c. the appropriate deadline for the filing of a joint pretrial statement in the form generally required by this court, see http://www.paeb.uscourts.gov/pages/frank/701.pdf;

    d. any other pretrial management issues that the parties believe require resolution before the court may schedule a trial date for this adversary proceeding.

Date:    May 26, 2009

                                                **ERIC L. FRANK**
                                                **U.S. BANKRUPTCY JUDGE**